# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re:

LINCOLN PAPER AND TISSUE, LLC

Debtor.

Chapter 11

Case No. 15-10715

## ORDER: (A) APPROVING BID PROCEDURES FOR SALE OF SOME OR ALL OF THE DEBTOR'S ASSETS; (B) APPROVING ASSUMPTION PROCEDURES FOR CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) APPROVING A BREAK-UP FEE, EXPENSE REIMBURSEMENT AND OVERBID PROTECTIONS; AND (D) APPROVING A FORM OF NOTICE OF SALE

Lincoln Paper and Tissue, LLC (the "Debtor") filed the *Motion for Order: (A) Approving Bid Procedures for Sale of Some or All of the Debtor's Assets; (B) Approving Assumption Procedures for Certain Executory Contracts and Unexpired Leases; (C) Approving a Break-Up Fee, Expense Reimbursement and Overbid Protections; and (D) Approving a Form of Notice of Sale* (the "Bid Procedures Motion").[1]   As filed, the Bid Procedures Motion concerns the Debtor's proposed sale of a substantial portion of the Debtor's assets (the "Purchased Assets") to LP Acquisitions LLC (the "Purchaser"), subject to higher and better offers.   An emergency hearing on the Bid Procedures Motion (the "Bid Procedures Hearing") was held on October 9, 2015, at which time the Court heard the arguments of counsel with respect to the Bid Procedures Motion, including any objections thereto; and it appearing that due notice of the Bid Procedures Motion has been given and that no other or further notice need be given; and based upon the foregoing and the entire record of the Bid Procedures Hearing, and after due deliberation thereon, and good cause appearing therefor, it is hereby:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bid Procedures Motion.

**ORDERED**, that the Bid Procedures Motion is **GRANTED and APPROVED** on the terms set forth herein; and it is further

**ORDERED**, that the bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") and the assumption and assignment procedures attached hereto as **Exhibit 2** (the "Assumption Procedures") are approved, and the Debtor may conduct a sale process in accordance with the Bid Procedures and the Assumption Procedures for the purpose of obtaining the highest or otherwise best bid for the Assets; and it is further

**ORDERED**, that the form and content of the *Notice of (A) Sale of Certain Assets of the Debtor, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Procedure for Determining Cure Amounts* attached hereto as **Exhibit 3** (the "Sale Notice") is hereby approved; and it is further

**ORDERED**, that the form and content of the *Notice of Assumption and Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases Related to the Sale of the Assets of the Debtor* attached hereto as **Exhibit 4** (the "Cure Notice") is hereby approved; and it is further

**ORDERED** that, if served, service of the Cure Notice in accordance with the Assumption Procedures constitutes sufficient notice under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure of any Cure Amounts alleged to be owed to the Counterparties as set forth on any Cure Schedule; and it is further

**ORDERED**, that the Debtor is hereby authorized and directed to serve the Sale Notice on the Sale Notice Parties; and it is further

**ORDERED** that such service is hereby deemed to be sufficient notice under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure of (i) the sale of the Assets

and (ii) the assumption and assignment of the executory contracts and unexpired leases that may be assumed and assigned in connection with the sale of the Assets; and it is further

ORDERED, that any person seeking to submit a bid for some or all of the Assets and executory contracts and/or unexpired leases of the Debtor shall comply with the Bid Procedures and shall submit such bid to counsel for the Debtor, Robert J. Keach, Esq. and D. Sam Anderson, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, P.O. Box 9729, Portland, ME 04104-5029 (Fax: (207) 774-1127; email: rkeach@bernsteinshur.com and sanderson@bernsteinshur.com) so as to be received no later than 11:00 a.m. (prevailing Eastern Time) on November 9, 2015 (the "Bid Deadline"); and it is further

ORDERED, that any bid must comply with the terms and conditions of the Bid Procedures, and it is further

ORDERED, that an auction (the "Auction") will be held at the offices of Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, Portland, ME, beginning at 9:00 a.m. on November 10, 2015; and it is further

ORDERED, that only Qualified Bidders shall be entitled to submit further bids at the Auction in accordance with the provisions of the Bid Procedures and those other procedures which may be announced at the time of the Auction; and it is further

ORDERED, that the Sale Hearing will be held on November 10, 2015 at 1:00 p.m. before the Honorable Peter J. Cary, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Maine, 537 Congress Street, 2nd Floor, Portland, ME 04101; and it is further

ORDERED, that any objection to a Cure Amount and any objection to the potential assumption and assignment of an executory contract or lease must be filed in accordance with the Assumption Procedures; and it is further

**ORDERED**, that, if any Counterparty fails to timely object to the Cure Amount, the Counterparty will be forever barred from disputing the Cure Amount; and it is further

**ORDERED**, that pursuant to Bankruptcy Code section 363(f)(1), all anti-assignment provisions of the Selected Contracts are and are deemed to be unenforceable; and it is further

**ORDERED**, that the Purchase Price set forth in section 2.5 of the Stalking Horse Agreement shall be adjusted to $5,300,000; and it is further

**ORDERED**, that, at the closing of a competing transaction for the acquisition of the Stalking Horse Assets for a higher or better value than that contemplated by the Stalking Horse, the Debtor is authorized to pay to the Stalking Horse as an administrative expense pursuant to Bankruptcy Code Sections 105(a) and 503(b) a break-up fee in the amount of $150,000 (the "Break-Up Fee"), but, for the avoidance of doubt, the Stalking Horse shall not be entitled to any claim for expense reimbursement; and it is further

**ORDERED**, that no offer for any of the Stalking Horse Assets shall be accepted by the Debtor unless the proposed purchase price equals or exceeds the Purchase Price for the Stalking Horse Assets by the sum of (the "Minimum Overbid"): (i) the Break-Up Fee; plus (ii) $100,000; and it is further

**ORDERED**, that this Order shall become effective immediately upon its entry; and it is further

**ORDERED**, that this Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated:  October 9 , 2015

 /s/ Peter G. Cary
**The Honorable Peter G. Cary**
**Chief Judge for the United States**
**Bankruptcy Court for the District of**
**Maine**

## EXHIBIT 1

### Bid Procedures

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

|  |  |
|---|---|
| In re:<br><br>LINCOLN PAPER AND TISSUE, LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10715 |

## BID PROCEDURES

Set forth below is the general process to be employed by Lincoln Paper and Tissue, LLC, the above captioned debtor (the "Seller") with respect to the proposed sale of some or all of the assets of Seller, as contained in the Debtor's Motion for Order: (A) Approving Bid Procedures for Sale of Some or All of the Debtor's Assets; (B) Approving Assumption Procedures for Certain Executory Contracts and Unexpired Leases; (C) Approving a Break-Up Fee, Expense Reimbursement and Overbid Protections; and (D) Approving a Form of Notice of Sale [D.E. 66] (the "Bid Procedures Motion").[1]

### i.    *Qualified Bids*

(a)    **Assets to Be Sold**.  The Debtor is offering the Assets for sale.  Bidders may submit a bid for less than all of the Stalking Horse Assets or a bid that includes more than the Stalking Horse Assets (the "Other Assets").  As to each Proposed Agreement (as defined below), the Assets designated for purchase shall be the "Purchased Assets."[2]

(b)    **The Bidding Process**.  The Debtor, in conjunction with its advisors and using reasonable discretion taking into account its fiduciary duties, shall: (i) determine whether any person is a Potential Bidder (as defined below); (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bid Procedures Motion.

[2] The sale of the Assets will be conducted in a manner consistent with the rights and obligations of the Debtor and Siena Lending Group LLC (the "DIP Lender") under the Debtor-In-Possession Loan and Security Agreement Dated as of September 30, 2015 and any and all documents executed in relation thereto (the "DIP Credit Agreement") and the terms of any orders issued by this Court authorizing the Debtor to borrow post-petition funds under the same (the "DIP Orders").  Nothing herein shall be construed to limit, alter, modify or amend, in any way, the rights and obligations of the Debtor and the DIP Lender under the DIP Credit Agreement and/or the DIP Orders.

investigations regarding the Assets; (iii) receive offers from Qualified Bidders (as defined below); and (iv) negotiate any offer made to purchase any of the Assets, together or separately (collectively, the "Bidding Process").

(c)    **Potential Bidders**.  To be a "Potential Bidder," each bidder must have delivered the following:

(i)     An executed confidentiality agreement in a form satisfactory to the Debtor in its reasonable discretion taking into account its fiduciary duties, provided that no Potential Bidder will be required to execute a confidentiality agreement more onerous in any material respect to the confidentiality agreements executed by other Potential Bidders; and

(ii)    Current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence acceptable to the Debtor and its advisors in their reasonable discretion taking into account the Debtor's fiduciary duties, demonstrating such Potential Bidder's ability to close the proposed transaction, to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder.

(d)    **Due Diligence**.  The Debtor shall afford each Potential Bidder due diligence access to the Assets.  Neither the Debtor, nor its representatives, shall be obligated to furnish information of any kind whatsoever relating to the Assets to any person who is not a Potential Bidder.

(i)     Due diligence access may include management presentations as may be scheduled by the Debtor, access to data rooms, onsite inspections and such other matters which a Potential Bidder may request and as to which the Debtor may agree in its reasonable discretion taking into account its fiduciary duties, provided that all such information shall be made available to each Potential Bidder on an equal basis.

(ii)    Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtor or its representatives.

(iii)   Each Potential Bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the

2

completeness of any information provided in connection with the Assets, the Bidding Process or the Auction, except as expressly stated in these Bid Procedures or, as to the Successful Bidder, in the applicable Proposed Agreement.

(e)     **Participation Requirements**.   Unless otherwise ordered by the Bankruptcy Court for cause shown or as otherwise determined by the Debtor in its reasonable discretion, taking into account its fiduciary duties, in order to participate in the Bidding Process, each Potential Bidder must submit a bid that adheres to the following requirements (such a qualifying bid, a "Qualified Bid," and any person submitting such a bid, a "Qualified Bidder"):[3]

(i)     The Stalking Horse will be deemed to be a Qualified Bidder and the Stalking Horse Agreement will be deemed to be a Qualified Bid (the "Stalking Horse Bid"), without the need to comply with any of the requirements set forth below.

(ii)     All Qualified Bids must be submitted to counsel for the Debtor: Robert J. Keach, Esq. and D. Sam Anderson, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, P.O. Box 9729, Portland, ME, 04104-5029 (Fax: (207) 774-1127; email: rkeach@bernsteinshur.com, sanderson@bernsteinshur.com) not later than 11:00 a.m. (prevailing Eastern Time) on **November 9, 2015** (the "Bid Deadline").   Upon determination that any Bid is not a Qualified Bid, the Debtor shall notify such bidder of such determination forthwith, but in any event not later than the commencement of the Auction, and shall provide such bidder with the basis for such determination.

(iii)     Immediately upon receipt of any Bid(s), Debtor's counsel shall provide DIP Lender and the Committee with a copy of such Bid(s) for review. After reviewing any such Bid(s), but prior to the commencement of the Auction, DIP Lender shall notify the Debtor whether DIP Lender will participate in the Auction as a Potential Bidder.   Should DIP Lender so participate, DIP Lender will be deemed to be a Qualified Bidder and any asset purchase agreement submitted by the DIP Lender will be deemed a Qualified Bid (the "DIP Lender Bid") without the need to comply with any of the requirements set forth below.   In accordance with the DIP Credit Agreement and DIP Orders, the DIP Lender is authorized to credit bid in connection with any Sale Transaction; provided, however, that notwithstanding any other provision in these Bid Procedures, the Debtor shall not consult with DIP Lender during the Auction if the DIP Lender has submitted a DIP Lender Bid.

---

[3] Any Potential Bidder submitting a Bid that otherwise constitutes a Qualified Bid is deemed, by the submission of such Qualified Bid, to consent to such Qualified Bid being treated by the Debtor as Back-up Bidder as that term is defined below.

(iv)    All Qualified Bids shall be in the form of an offer letter from a person or persons that the Debtor, in its reasonable discretion taking into account its fiduciary duties, deems financially able to consummate the purchase of the Assets, which letter states:

    (A)    that such Qualified Bidder offers to purchase some or all of the Assets upon the terms and conditions set forth in an executed asset purchase agreement (an electronic version in Word format and blacklined against the Stalking Horse Agreement), together with its exhibits and schedules, including terms relating to price and the time of closing (the "Proposed Agreement");

    (B)    that such Qualified Bidder is prepared to consummate the transaction, following entry of an order of this Court approving the Sale to the Successful Bidder (the "Sale Order");

    (C)    that in the event such Qualified Bidder becomes the Successful Bidder or the Back-up Bidder (as defined below), such Qualified Bidder's offer is irrevocable until two (2) business days after the closing of the sale of the Assets;

    (D)    the actual value of such Qualified Bidder's bid to the Debtor's estate; and

    (E)    which (if any) of the Debtor's leases and executory contracts are to be assumed in connection with the consummation of the Qualified Bidder's bid.

(v)    All Qualified Bids must exceed the Stalking Horse Bid in relation to the Stalking Horse Assets by the Minimum Overbid (as that term is defined in the *Order: (A) Approving Bid Procedures for Sale of Some or All of the Debtor's Assets; (B) Approving Assumption Procedures for Certain Executory Contracts and Unexpired Leases; (C) Approving a Break-Up Fee, Expense Reimbursement and Overbid Protections; and (D) Approving a Form of Notice of Sale* (the "Bid Procedures Order").

(vi)    All Qualified Bids shall be accompanied by a deposit into escrow with the Debtor of an amount equal to 3.0% of the proposed purchase price for such bid (the "Good Faith Deposit").

(vii)    All Qualified Bids shall be accompanied by satisfactory evidence, in the reasonable opinion of the Debtor, the Committee, and their advisors, taking into account the Debtor's fiduciary duties, of committed financing or other ability to perform all transactions contemplated by the Proposed Agreement.

(viii)    Qualified Bids shall not contain any financing conditions or contingencies (other than those set forth in the Stalking Horse Agreement).

4

(ix)    All Qualified Bids must provide for adequate working capital financing to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Potential Bidder.

(f)    **"As Is, Where Is**." The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, except to the extent set forth in the Proposed Agreement of the Successful Bidder.

(g)    **Free and Clear**. Except as otherwise provided in the Proposed Agreement, all of the Debtor's right, title and interest in and to the Assets to be acquired shall be sold free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against (collectively, the "<u>Transferred Liens</u>"), with such Transferred Liens to attach to the proceeds of the sale.

## ii.   *The Auction*

(a)    <u>**Cancellation of Auction**</u>. If the Debtor does not receive any Qualified Bids other than the Stalking Horse Bid, the Debtor, in consultation with the DIP Lender and the Committee, will report the same to this Court, cancel the Auction and proceed to seek authorization to enter into the Stalking Horse Agreement.

(b)    **Auction.** If the Debtor receives more than one Qualified Bid prior to the Bid Deadline, the Debtor shall, in consultation with the DIP Lender and the Committee, conduct the Auction at the offices of Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, Portland, ME 04104 on **November 10, 2015, beginning at 9:00 a.m. (prevailing Eastern Time)** or such later time or other place as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids.

(i)    All parties in interest may attend the Auction, subject to reasonable restrictions based on the space available for the Auction. The Bankruptcy Court shall adjudicate any dispute regarding Auction attendance.

(ii)    The Debtor, in its reasonable discretion taking into account its fiduciary duties, and in consultation with the DIP Lender, the Finance Authority of Maine ("<u>FAME</u>"), Sullivan & Merritt Constructors, Inc. ("<u>Sullivan</u>"), Fastco Corporation ("Fastco" and, together with FAME and Sullivan, the "<u>Other Secured Creditors</u>") and the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances (<u>e.g.</u>, the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with these Bid Procedures. The Debtor may, in consultation with the DIP Lender, the Other Secured Creditors and the Committee,

and based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtor, in its reasonable discretion taking into account its fiduciary duties, determines is relevant, conduct the Auction in the manner it determines will achieve the maximum value for the Assets. At the Auction, the minimum initial bid against the Stalking Horse bid must exceed the value of the Stalking Horse Bid by the Minimum Overbid (as defined in the Bid Procedures Order) in relation to the Stalking Horse Assets. Subsequent bids in relation to the Stalking Horse Assets shall be made in minimum increments of not less than $50,000 (subject to the discretion of the Debtor and in consultation with the DIP Lender and the Committee) (the "Subsequent Overbid").

(iii)    At the commencement of the Auction and at the conclusion of each round of bidding at the Auction, the Debtor, in its reasonable discretion taking into account its fiduciary duties, and in consultation with the DIP Lender, the Other Secured Creditors and the Committee, shall announce the then highest or otherwise best offer or combination of offers for the Assets and the basis for such determination, including identifying any non-economic terms that form the basis for such determination.

(iv)    Prior to concluding the Auction, the Debtor shall, in consultation with the DIP Lender, the Other Secured Creditors and the Committee: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (ii) using its reasonable discretion taking into account its fiduciary duties, identify and announce to all attending the Auction the highest or otherwise best offer or combination of offers for the Assets (the "Successful Bid") and any second-highest offer (the "Back-up Bid" and the Qualified Bidder submitting such Back-up Bid, the "Back-up Bidder") and the basis for such determination.

(v)    The Successful Bidder shall execute an asset purchase agreement for the Successful Bid at the conclusion of the Auction. The Debtor shall present the Successful Bid to the Bankruptcy Court for approval at the Sale Hearing. The Back-up Bidder shall also execute an asset purchase agreement for the Back-up Bid, contingent on the failure to close of the Successful Bid.

(c)    **Acceptance of Qualified Bids.**    Subject to the terms of the DIP Credit Agreement and the DIP Orders, the Debtor shall sell the Stalking Horse Assets to the Stalking Horse or the Purchased Assets to the Successful Bidder, as the case may be, submitting the highest or otherwise best Qualified Bid at the Auction, after approval of such Qualified Bid by the Bankruptcy Court at the Sale Hearing. The Debtor's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtor's acceptance of such

Qualified Bid.  The Debtor shall have accepted a Qualified Bid only when that Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

(d)    **The Sale Hearing.**  After the conclusion of the Auction, the Bankruptcy Court shall conduct the Sale Hearing to approve the Sale Transaction by no later than November 12, 2015.  At the Sale Hearing, the Debtor will seek entry of an order (the "Sale Order"), in form and substance acceptable to the DIP Lender, among other things, authorizing and approving the Sale to the Successful Bidder(s), as determined by the Debtor in accordance with the Bid Procedures, pursuant to the terms and conditions set forth in the Proposed Agreement(s) submitted by the Successful Bidder(s) (as such agreement may be modified prior to, during or after the Auction with the agreement of the Debtor).  The Committee and the Other Secured Creditors shall have the opportunity to review, and comment upon, the Sale Order prior to the Sale Hearing.  The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court.  Following the entry of the Sale Order approving the Sale, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-up Bid, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid(s) and the Debtor shall be authorized to effectuate such sale without further order of the Bankruptcy Court.

(e)    **Return of Good Faith Deposit**.

(i)    The Good Faith Deposits of the Qualified Bidders other than the Successful Bidder(s) and the Back-up Bidder shall be returned to the applicable Qualified Bidder within two (2) business days after entry of the Sale Order.

(ii)    The Good Faith Deposits of the Successful Bidder(s) and the Back-up Bidder (to the extent applicable) shall be retained by the Debtor and such Successful Bid and Back-up Bid will remain open and irrevocable, notwithstanding Bankruptcy Court approval of a sale to a Successful Bidder, until two (2) business days after the closing of the Sale Transaction.

(A)    The Debtor shall credit the Successful Bidder's Good Faith Deposit (if any) against the Purchase Price, and upon the closing of the Sale Transaction, shall return to the Back-up Bidder its Good Faith Deposit.

(B)    If a Successful Bidder fails to consummate a Sale Transaction on or before November 27, 2015 because of such Successful Bidder's breach or failure to perform, the Debtor will have no obligation to return such Successful Bidder's Good Faith Deposit (if any), which shall be retained by the Debtor as liquidated damages to the extent the Debtor is entitled to such damages under the Proposed Agreement.  In such an event, the Debtor

shall proceed with closing of the Sale Transaction to the Back-up Bidder, and shall credit the Back-up Bidder's Good Faith Deposit (if any) against the Purchase Price. In the event the Back-up Bidder fails to close on or before November 27, 2015, the DIP Lender reserves the right to credit bid with respect to any Assets.

(f)    **Assessment of Qualified Bids.**    The Debtor, in consultation with the DIP Lender and the Committee, may: (i) determine, in its reasonable business judgment taking into account its fiduciary duties, which Qualified Bid, if any, is the highest or otherwise best offer; (ii) consult with any significant constituent in connection with the bidding process and Bid Procedures (other than with a Qualified Bidder about the Qualified Bid of a different Qualified Bidder); and (iii) reject at any time before announcing the Successful Bid at the Auction, any bid that, in the Debtor's reasonable discretion taking into account its fiduciary duties, is: (x) inadequate or insufficient; or (y) not in conformity with the Bankruptcy Code or the Bid Procedures.

(g)    **Reservation of Rights**: In addition to its rights set forth in section (b) above, the Debtor, in consultation with the DIP Lender, the Other Secured Creditors and the Committee, may modify these Bid Procedures or impose, at or prior to the Auction, additional terms and conditions on the proposed Sale of the Assets if, in its reasonable judgment, taking into account its fiduciary duties, such modifications would be in the best interests of the Debtor's estate and promote an open and fair sale process. Without limitation, at any point during the Auction, the Debtor, in consultation with the DIP Lender, the Other Secured Creditors and the Committee, shall have the absolute right to convert the bidding process from an open auction to a "sealed bid auction," in which case all Qualified Bidders shall have one opportunity to make a final, sealed bid. If the Debtor exercises this option, the Debtor shall collect all sealed bids, analyze them, and, in consultation with the DIP Lender, the Other Secured Creditors and the Committee, determine the Successful Bid and any Back-up Bid.

## EXHIBIT 2

**Assumption Procedures**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re:

LINCOLN PAPER AND TISSUE, LLC

Debtor.

Chapter 11

Case No. 15-10715

## ASSUMPTION PROCEDURES

Set forth below are the assumption and assignment procedures (the "Assumption
Procedures") to be employed with respect to the proposed sale of some or all of the assets of
Lincoln Paper and Tissue, LLC (the "Debtor"), as contained in the Debtor's Motion for Order:
(A) Approving Bid Procedures for Sale of Some or All of the Debtor's Assets; (B) Approving
Assumption Procedures for Certain Executory Contracts and Unexpired Leases; (C) Approving
a Break-Up Fee, Expense Reimbursement and Overbid Protections; and (D) Approving a Form
of Notice of Sale [D.E. 66] (the "Bid Procedures Motion").[1]

(a)    **Successful Bidder May Designate Selected Contracts**.    In the event a
Successful Bidder other than the Stalking Horse is chosen, the Successful Bidder
(and any Back-up Bidder) may, at any time through Closing, designate Selected
Contracts for the Debtor to assume and assign to the Successful Bidder (or the
Back-up Bidder, as applicable) in connection with consummation of the Sale
Transaction.

(b)    **Selected Contracts Schedule**.    In the event of such Successful Bidder's (or
Back-up Bidder's) designation of Selected Contracts, the Debtor will (i) file a
list (the "Selected Contracts Schedule") of such Selected Contracts together with
the amounts the Debtor believes are required to cure any defaults under such
Selected Contracts (the "Cure Amounts") and (ii) serve each counterparty to a
Selected Contract (each, a "Counterparty") by electronic or overnight mail with
notice that their contract or lease has been selected for assumption and
assignment to the Successful Bidder, including the applicable Cure Amount (in
substantially the form attached as Exhibit 4 to the Bid Procedures Order, the
"Cure Notice").

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Bid
Procedures Motion.

(c)     **Objections to Assumption and Assignment**.  Any Counterparty that objects to (i) the ability of the Successful Bidder(s) (or the Back-up Bidder) to provide adequate assurance of future performance with respect to their Selected Contract(s) or (ii) the Cure Amount for their Selected Contract(s) must file an objection (a "Cure Objection") on the Court's docket in accordance with the following within five (5) days of the date of the Cure Notice:

    (i)     If the Counterparty objects to the Cure Amount, the objection must include the Cure Amount such Counterparty believes is owing.

    (ii)    If the Counterparty objects to the ability of the Successful Bidder(s) (or the Back-up Bidder) to provide adequate assurance of future performance with respect to their Selected Contract(s), the objection must explain why such Counterparty believes the Successful Bidder (or the Back-up Bidder) cannot provide adequate assurance of future performance.

    (iii)   The failure of a Counterparty to submit an objection will forever bar such Counterparty from (A) asserting any other Cure Amount or otherwise disputing such amounts with respect to any Selected Contract(s) and (B) objecting to the assumption and assignment of its Selected Contract(s) to the Successful Bidder or Back-up Bidder.

    (iv)    In the event a Cure Objection cannot be resolved, the Bankruptcy Court will adjudicate same on an expedited basis.

(d)     **Payment of Cure Amounts**.  Upon resolution of any issues relating to the assumption and assignment of executory contracts or unexpired leases, the Successful Bidder shall pay or cause to be paid any and all Cure Amounts with respect to its Selected Contracts.  In the event of any dispute relating to any Cure Amount, the Successful Bidder may elect not to assume the Selected Contract if it is unsatisfied with the resolution of such dispute.

## **EXHIBIT 3**

**Sale Notice**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

|  |  |
|---|---|
| In re: | Chapter 11 |
| LINCOLN PAPER AND TISSUE, LLC | Case No. 15-10715 |
| Debtor. | |

## NOTICE OF (A) SALE OF CERTAIN ASSETS OF THE DEBTOR, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) PROCEDURE FOR DETERMINING CURE AMOUNTS

To Creditors and Parties in Interest:

**NOTICE IS HEREBY GIVEN**, pursuant to 11 U.S.C. §§ 363 and 365, Fed. R. Bankr. P. 2002, 4001, 6004, 6006 and D. Me. LBR 6004-1(a)(2), that Lincoln Paper and Tissue, LLC (the "Debtor") intends to sell certain of its assets (the "Purchased Assets") and may assume and assign certain executory contracts and unexpired leases related thereto (the "Selected Contracts").[1]

The Debtor seeks final approval to sell the Purchased Assets and assume and assign the Selected Contracts to LP Acquisitions, LLC (the "Stalking Horse") pursuant to the asset purchase agreement with the Stalking Horse (the "Stalking Horse Agreement") attached to the Bid Procedures Motion as **Exhibit B**, or to any bidder that submits a higher and better bid. The Purchased Assets are more fully described in the Stalking Horse Agreement.[2]

Pursuant to the Stalking Horse Agreement, the Debtor will receive aggregate consideration of approximately $5,000,000.00 for the Purchased Assets from the Stalking Horse. The Debtor is soliciting higher and better offers by means of an Auction (as defined in **Schedule 1**), which shall be governed by the terms and conditions of the Procedures attached hereto as **Schedule 1** (the "Bid Procedures"). The Bid Procedures have been approved by the Bankruptcy Court.

Through this notice, **HIGHER AND BETTER OFFERS** to purchase the Purchased Assets (which Purchased Assets may include more or less than the assets being purchased by the Stalking Horse under the Stalking Horse Agreement), executory contracts, or unexpired leases as a purchaser desires, are hereby solicited. To be considered a qualified competing offer, a competing offer shall comply with the Bid Procedures, including the service of such competing offer by hand, facsimile, email or overnight mail upon Robert J. Keach, Esq. and D. Sam Anderson, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, P.O. Box

---

[1] The term "Purchased Assets" shall include and refer to the "Selected Contracts," if any.

[2] The Purchased Assets will be sold and transferred free and clear of all liens, claims and encumbrances. Any perfected, enforceable and valid liens shall attach to the proceeds of the sale according to priorities established under applicable law or order of the Bankruptcy Court (as defined below).

9729, Portland, ME (Fax: 207-774-1127; email: rkeach@bernsteinshur.com and sanderson@bernsteinshur.com); so as to be received **on or before 11:00 a.m. on November 9, 2015**. If a qualified bid is timely received, the Debtor will hold an open auction at the offices of Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, Portland, ME commencing at 9:00 a.m. on November 10, 2015 (the "Auction"). Any party who has submitted a Qualified Bid is expected to be present at the Auction, failing which such Qualified Bid may be stricken.

The Stalking Horse Agreement and the Bid Procedures Motion are on file with the United States Bankruptcy Court for the District of Maine, 537 Congress Street, 2nd Floor, Portland, ME 04101 (the "Bankruptcy Court"), and are available for review during regular business hours. Copies of the same are also available (free of charge) upon written request from Angela Stewart, Bankruptcy Paralegal, Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, P.O. Box 9729, Portland, ME 04104-5029 (Tel: 207-228-7374; email: astewart@bernsteinshur.com).

The **SALE HEARING** is scheduled to take place at the Bankruptcy Court before the Honorable Peter G. Cary, Chief Judge for the United States Bankruptcy Court for the District of Maine on November 10, 2015 at 1:00 p.m. Any party who has filed an objection is expected to be present at the Sale Hearing, failing which the objection may be overruled.

Dated: October __, 2015          **LINCOLN PAPER AND TISSUE, LLC**

By its proposed attorneys:

_/s/_ _____
Robert J. Keach, Esq.
D. Sam Anderson, Esq.
Lindsay K. Zahradka, Esq. (*pro hac vice* admission pending)
BERNSTEIN, SHUR, SAWYER & NELSON
100 Middle St., PO Box 9729
Portland, Maine 04104-5029
(207) 774-1200

## SCHEDULE 1 TO SALE NOTICE

### Bid Procedures

[*duplicate document omitted; see* <u>Exhibit 1</u> *to Bid Procedures Order*]

## SCHEDULE 2 TO SALE NOTICE

### Assumption Procedures

[*duplicate document omitted; see* <u>Exhibit 2</u> *to Bid Procedures Order*]

## EXHIBIT 4

**Cure Notice**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>LINCOLN PAPER AND TISSUE, LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10715 |

**NOTICE OF ASSUMPTION AND ASSIGNMENT AND CURE AMOUNT WITH
RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES
RELATED TO THE SALE OF THE ASSETS OF THE DEBTOR**

**TO:** **COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED
LEASES OF THE DEBTOR'S THAT MAY BE PROPOSED TO BE ASSUMED
AND ASSIGNED TO THE SUCCESSFUL BIDDER:**

**PLEASE TAKE NOTICE** that, on October 8, 2015, the above-captioned debtor and
debtor in possession (the "Debtor") filed the Motion for Order: (A) Approving Bid Procedures
for Sale of Some or All of the Debtor's Assets; (B) Approving Assumption Procedures for
Certain Executory Contracts and Unexpired Leases; (C) Approving a Break-Up Fee, Expense
Reimbursement and Overbid Protections; and (D) Approving a Form of Notice of Sale [D.E.
66] (the "Bid Procedures Motion") to, among other things, (a) establish auction and bid
procedures (the "Bid Procedures") with respect to the sale (the "Sale Transaction") of some or
all of the Debtor's assets (the "Assets"), (b) schedule an auction and sale hearing (the "Sale
Hearing") with respect to the Sale Transaction, and (c) approve the sale of the Assets and the
potential assumption and assignment of certain contracts and leases relating thereto free and
clear of all liens, claims, encumbrances and other interests.

**PLEASE TAKE NOTICE** that, on October __, 2015, the Court entered an order [D.E.
__] (the "Bid Procedures Order") which, among other things, approved the Bid Procedures and
set a date for the Sale Hearing.  The Sale Hearing is currently scheduled to be held on
November 10, 2015 at 1:00 p.m. (prevailing Eastern Time) at the United States Bankruptcy
Court for the District of Maine, 537 Congress Street, 2nd Floor, Portland, ME 04101 (the
"Court"), before the Honorable Peter G. Cary, Chief Judge for the United States Bankruptcy
Court for the District of Maine, to consider the Debtor's selection of the highest or otherwise
best bid and the approval of Sale Transaction.  The Sale Hearing may be adjourned from time to
time without further notice to creditors or parties in interest other than by announcement of the
adjournment in open Court or on the Court's docket.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures Motion,
the Debtor has sought authority to assume certain executory contacts and unexpired leases
relating to the Assets (any such contracts or leases, the "Selected Contracts") and assign them to
the Successful Bidder upon consummation of the Sale Transaction.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
MAY BE (OR REPRESENT) A PARTY TO A SELECTED CONTRACT.**

    **PLEASE TAKE FURTHER NOTICE** that Bankruptcy Code section 365(b)(1) requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. The required cure amount (the "Cure Amount") for each Selected Contract to which the Debtor believes you are Counterparty is listed below.[1] Please note that if no amount is stated for a particular Selected Contract, the Debtor believes that there is no Cure Amount outstanding for such contract or lease.

| Counterparty Name | Description of Contract | Cure Amount, if Any |
|---|---|---|
|  |  |  |

    **PLEASE TAKE FURTHER NOTICE** that to the extent that you object to: (i) the Cure Amount or (ii) the assumption and assignment of your respective Selected Contract to the Successful Bidder or the Back-up Bidder, if any (which will be announced on the record at the Sale Hearing), on the basis that such Successful Bidder (or Back-up Bidder) cannot demonstrate adequate assurance of future performance, you must file an objection in accordance with the Assumption Procedures attached to the Sale Notice. To the extent not resolved with the Debtor, your objection will be heard by the Bankruptcy Court.

    **PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment must state with specificity the legal and factual basis on which the objection is premised. Any objection to the Cure Amount must state with specificity what other Cure Amount is required and provide appropriate documentation in support thereof.

    **PLEASE TAKE FURTHER NOTICE** that, if an objection to a Cure Amount is filed, and if the Cure Amount is ultimately determined by order of the Court to be higher than the Cure Amount set forth above, the Successful Bidder reserves the right to delete the applicable contract or lease as a Selected Contract.

    **PLEASE TAKE FURTHER NOTICE** that, if no objection to the assumption and assignment of a Selected Contract or Cure Amount is timely filed and served, (a) the Counterparty shall be deemed to have consented to the assumption and assignment of the Selected Contract in connection with the Sale Transaction and shall be forever barred from asserting any objection with regard to such assumption or assignment, and (b) the Cure Amount set forth above shall be controlling, notwithstanding anything to the contrary in any Selected Contract, or any other document, and the Counterparty shall be deemed to have consented to the

---

[1] Neither the exclusion nor inclusion of any Selected Contract on the list below shall constitute an admission by the Debtor that any such contract or lease is in fact an executory contract or unexpired lease capable of assumption, that the Debtor has any liability thereunder or that such Selected Contract is necessarily a binding and enforceable agreement. Further, the Debtor expressly reserves the right to (i) remove any Selected Contract from the Selected Contracts list and reject such Selected Contract pursuant to the terms of a chapter 11 plan up until the effective date and (ii) contest any claim (or claim amount) asserted in connection with assumption of any Selected Contract.

Cure Amount and shall be forever barred from asserting any other claims related to such Selected Contract against the Debtor or the Successful Bidder, or the property of any of them.

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY SELECTED CONTRACT SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DEBTOR ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE OR ACTION OR ORDER OR APPROVAL OF THE BANKRUPTCY COURT.**

Dated:  October __, 2015                **LINCOLN PAPER AND TISSUE, LLC**

By its proposed attorneys:

 /s/_____
Robert J. Keach, Esq.
D. Sam Anderson, Esq.
Lindsay K. Zahradka, Esq. (admitted *pro hac vice*)
BERNSTEIN, SHUR, SAWYER & NELSON
100 Middle St., PO Box 9729
Portland, Maine 04104-5029
(207) 774-1200