## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>LINCOLN PAPER AND TISSUE, LLC<br><br>Debtor | Bk. No. 15-10715<br>Chapter 11 |

**SUPPLEMENTAL BRIEFING BY LPT HOLDING, LLC
IN SUPPORT OF OPPOSITION TO
OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR ENTRY OF
*NUNC PRO TUNC* ORDER GRANTING COMMITTEE LEAVE, STANDING, AND
AUTHORITY TO COMMENCE, PROSECUTE, SETTLE, AND RECOVER CERTAIN
CLAIMS AND/OR CAUSES OF ACTION OF DEBTOR'S ESTATE**

Pursuant to this Court's order of January 10, 2017, LPT Holding, LLC ("LPT Holding") submits this Supplemental Briefing in support of its opposition to the *Motion For Entry Of Nunc Pro Tunc Order Granting Committee Leave, Standing, And Authority To Commence, Prosecute, Settle, and Recover Certain Claims and/or Causes Of Action Of Debtor's Estate* (D.E. 791) (the "Standing Motion") filed by the Official Committee Of Unsecured Creditors (the "Committee").

### Relief Requested

This Court granted the Standing Motion on an interim basis, reserving all parties' rights to renew their respective objections (the "Standing Order"). (D.E. 836.) LPT Holding focuses here on a single element of the Standing Motion and Standing Order, concerning the Debtor's attorney-client privilege. Specifically, the Standing Order (using language requested by the Committee) ordered:

> The Committee has authority to hold, assert, and, if necessary, waive Debtor's attorney-client privilege and Debtor's work-product privilege, solely for the benefit of, and on behalf of Debtor's estate with regard to the Committee's assertion and pursuit of the Claims; provided, however, that nothing contained in this Order shall limit or preclude the rights, if any, of any other party to assert an attorney-client privilege or a work product privilege other than any such privilege held by Debtor.

(D.E. 836 at 3.)

1

If, after reviewing the supplemental briefing filed by all parties and considering the arguments raised at the January 10 hearing, this Court again decides to grant the Committee derivative standing, LPT Holding requests that this or similar language <u>not</u> be included in any such order. There is no good reason for this Court to create a blanket, broad transfer of the attorney-client privilege from the Debtor (who remains represented and involved in this case) to the Committee. Instead, this Court should address attorney-client privilege issues on an as-needed basis if they arise during the course of the Committee's adversary proceeding.

**Factual Background**

In April 2016, the Committee sought derivative standing to bring certain claims on behalf of the bankruptcy estate against Keith Van Scotter and John Wissman (the "<u>Compromise Motion</u>"). (D.E. 512.) The Compromise Motion did not mention attorney-client privilege. This Court's Order granting the 9019 Motion (the "<u>Compromise Order</u>") did not mention attorney-client privilege. (D.E. 566.)

When the Committee realized that "arguably, the Compromise Order does not contain an express grant of derivative standing for the Committee to pursue the Claims against all the Potential Defendants," *Standing Motion* at 4, it filed the Standing Motion to "clarify the scope of the compromise and to ensure that the Committee is granted . . . derivative standing." *Id.* at 5. The "Relief Requested" section of the Standing Motion does not mention attorney-client privilege. *Id.* at 6 (identifying derivative standing and the need to have it applied *nunc pro tunc* as the relief requested). The "Wherefore" clause of the Standing Motion does not mention attorney-client privilege. *Id.* at 12 (asking that the Court "enter an Order: (i) granting the Committee leave, standing, and authority to commence, prosecute, settle, and recover the Claims against any and all Potential Defendants; (ii) conferring such leave, standing, and authority effective retroactively as of May 13, 2016; and (iii) granting the Committee such other and futher relief as is just and equitable").

2

The Standing Motion contains no legal arguments in support of any grant of attorney-client privilege. Indeed, the Standing Motion does not appear to have the words "attorney-client privilege" contained in it at all. The only place such language appears is in the Committee's proposed order.

After the December 6 hearing and discussions with undersigned counsel, counsel for Defendant Rod Fisher filed a response and proposed order objecting to the grant of attorney-client privilege requested by the Committee. (D.E. 834 at 1-2.) LPT Holding consented to the entry of the proposed order submitted by Mr. Fisher omitting the attorney-client language.

## Discussion

For the purposes of this Supplemental Briefing, LPT Holding addresses the scenario in which this Court decides to grant the Committee derivative standing to bring the Claims (as defined in the Standing Motion) on behalf of the bankruptcy estate.[1] In essence, this will mean that the Debtor has assigned the prosecution of certain claims owned by the Debtor to the Committee.

In addition to acquiring the right to pursue certain claims, the Committee seeks a broad transfer of the Debtor's attorney-client privilege from the Debtor to itself. Under the language proposed by the Committee and incorporated into the Standing Order, the Committee has absolute control over the exercise and waiver of the Debtor's attorney-client privilege as it relates to any topic connected with "the Committee's assertion and pursuit of the Claims." *Standing Order* at 3.

This grant is quite broad. The claims pursued by the Committee relate to the management and operations of the Debtor. As such, it is difficult to identify *any* contact between the Debtor and Debtor's counsel that would not be implicated. Accordingly, the Committee would A) have full access to otherwise privileged information belonging to the Debtor and B) be able to bar other

---

[1] LPT Holding shares many of the concerns it anticipates that Defendant Rod Fisher will raise regarding the legitimacy of the process by which the Committee purportedly obtained derivative standing, but does not further address those concerns here.

3

litigants, including current officers and the sole member of the Debtor, from accessing the same information. Such a transfer of privilege is unnecessary and problematic.

By analogy, consider the transfer of a promissory note from one holder to another. The new holder now has "leave, standing, and authority to commence, prosecute, settle, and recover" the claims represented by the note. *See Standing Motion* at 1 (using identical language in its request to this Court). The new holder has effectively stepped into the shoes of the old holder with respect to the transferred claim. But the ability to pursue a claim is all that the new holder gets. Unless specifically provided for, the new holder of the claim does not have the right to assert or waive the attorney-client privilege of the old holder.

Here, the mere fact that the Committee may acquire derivative standing to pursue its claims does not and should not, in and of itself, entitle the Committee to acquire the Debtor's attorney-client privilege. Despite request, the Committee has not identified any case law that would support such a conclusion. Indeed, the Debtor continues to operate, continues to be represented by able counsel, and continues to participate in both the main bankruptcy case and the pending adversary action brought by the Committee. The Debtor is perfectly capable of exercising its attorney-client privilege on its own.

It is true that a *trustee* in bankruptcy acquires the power to assert or waive the attorney-client privilege. *Community Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 349 (1985). In *Weintraub*, the Supreme Court noted that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* By analogy, because "the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor" and "the trustee plays the role most closely analogous to that of a solvent corporation's management," the Supreme Court held that the power to waive the debtor's attorney-client privilege should be vested in the trustee. *Id.* at 353. However, this rule does not apply to cases where the

4

debtor remains in possession. There, the management of the debtor would maintain control of the corporation's attorney-client privilege, consistent with its obligation to treat all parties fairly. *Id.* at 355-356; *see also Official Comm. Of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 422 (S.D.N.Y. 2006) (analyzing *Weintraub* and concluding that a committee of creditors did not have the same authority as a trustee to control the attorney-client privilege).

At the January 10 hearing, the Committee referenced a Fifth Circuit case involving a shareholder suit. *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). In *Garner*, the Fifth Circuit examined a corporation's attempt to assert its attorney-client privilege in the context of a shareholder suit. *Id.* at 1095. The court concluded that "The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders." *Id.* at 1103. However, in order to balance the interests of the stockholders in pursuing claims against the corporation, the Fifth Circuit held that "the availability of the privilege [is] subject to the right of the stockholders to show cause why it should not be invoked." *Id.* at 1104. In other words, the corporation retained control over its own attorney-client privilege, but the assertion of that privilege was subject to the stockholders showing good cause to override it.

The court went on to list some factors to be considered to determine whether good cause exists to prevent the assertion of the privilege, including: "the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources," "whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons." *Id.*

5

As can be seen from this list, the analysis recommended by the *Garner* court necessarily focuses heavily on the nature of the specific communication at issue.

As currently drafted, the Standing Order creates a blanket rule concerning the attorney-client privilege for all communications "with regard to the Committee's assertion and pursuit of the Claims." It is impossible to anticipate every attorney-client communication that might be implicated by this blanket rule and impossible to anticipate the implications of granting the Committee this power. Instead of creating a blanket rule, this Court should defer the issue until it turns from theoretical to real: when a specific communication has been requested and not produced due to a claim of privilege. At that time, this Court can decide whether the privilege may be sustained, whether that be under the *Garner* standard or some other standard.

The Committee may propose different wording for the attorney-client privilege section of the Standing Order. For the reasons set forth above, any blanket rule about the privilege is premature.

A final note: to the extent that the Debtor and LPT Holding were co-clients, each may assert the attorney-client privilege over joint communications with counsel, and the waiver of such privilege requires the consent of both. Restatement (Third) of the Law Governing Lawyers § 75(2). LPT Holding hereby expressly preserves and does not waive its attorney-client privilege with respect to any such communication.

DATED at Portland, Maine, this 23rd day of January, 2017.

/s/ Kelly W. McDonald, Esq.
Kelly W. McDonald, Esq.
Attorney for LPT Holding, LLC

MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, Maine 04104-5085
(207) 773-5651

6

## CERTIFICATE OF SERVICE

  I, Kelly W. McDonald, Esq., certify that I caused to be served on this day true copies of the above document and this Certificate of Service upon each of the parties set forth on the Service List below, via First Class U.S. mail, postage fully prepaid, on this date.

  All other parties listed on the Notice of Electronic Filing have been served electronically on this date.

Dated: January 23, 2017        Respectfully submitted,

                /s/ Kelly W. McDonald
                Kelly McDonald, Esq.
                kmcdonald@mpmlaw.com

                MURRAY PLUMB & MURRAY
                75 Pearl Street, P.O. Box 9785
                Portland, ME 04104-5085
                (207)773-5651
                (207) 773-8023 (Fax)

                *Attorney for* LPT Holding, LLC

**Service List**

  N/A